Grafton
No. 2002-511

IN RE JUVENILE 2002-511-A & a.

Argued: May 8, 2003
Opinion Issued: June 24, 2003

*Peter W. Heed,* attorney general (*Karen A. Schlitzer,* attorney, on the brief and orally), for the State.

*Brian P. McEvoy,* of Laconia, by brief and orally, for the appellant.

NADEAU, J. The appellant, the mother of juveniles 2002-511-A and 2002-511-B (children), appeals a dispositional order of the Superior Court (*Burling,* J.) issued in a proceeding under the Child Protection Act. *See* RSA ch. 169-C (2002) (amended 2002). The appellant contends that the trial court erred by failing to issue an order specifying conditions to be met before she could regain custody of her children. We reverse and remand.

We are able to discern the following facts from the limited record provided to us on appeal. In February 2001, the division for children, youth and families (DCYF) received a report that the children were neglected. After neglect petitions were filed, the Plymouth Family Division ordered the children removed from the appellant's home. They were subsequently placed with their father, who was divorced from the appellant. Following proceedings in the Plymouth Family Division, the appellant appealed to the superior court, *see* RSA 169-C:28 (2002), which entered a finding of neglect against her. After a dispositional hearing, the superior court closed the neglect case, awarded legal custody of the children to their father and directed that all further proceedings concerning visitation and custodial rights be considered within the jurisdiction of the parents' marital case.

On appeal, the appellant contends that RSA 169-C:19 and :21 required the superior court to specify conditions for reunification with her children in its dispositional order, and that its failure to do so deprived her of both her statutory rights and procedural due process. The State argues that RSA 169-C:21 applies only to proceedings in the district court or family division, and that the appellant had failed to satisfy the conditions for reunification established by the family division.

We will sustain the findings and rulings of the trial court unless they are unsupported by the evidence or tainted by error of law. *See In re P. Children,* 149 N.H. 129, 130 (2003). The issue before us involves the interpretation of a statute, which is a question of law that we review *de novo. See Appeal of Tennis,* 149 N.H. 91, 93 (2003). When interpreting a statute, we start with the language of the statute itself. *See id.*

RSA 169-C:21, II provides that, if the court enters a final order finding a child neglected, the order "shall include conditions the parents shall meet before the child is returned home." We note that the children have been placed with one of their parents. At oral argument, the State conceded for purposes of this case that the requirement imposed by RSA 169-C:21, II attaches when a child is removed from the home regardless of where the child is subsequently placed. Therefore, we do not consider whether

placement with a parent constitutes an exception to the application of the statute.

█ We have previously held that RSA 169-C:28 requires "the superior court to hear both the adjudicatory and dispositional aspects of [a] neglect case *de novo*." *In re Thomas M.*, 141 N.H. 55, 60 (1996). A "hearing *de novo*" is defined as: "1. A reviewing court's decision of a matter anew, giving no deference to a lower court's findings. 2. A new hearing of a matter, conducted as if the original hearing had not taken place." BLACK'S LAW DICTIONARY 725 (7th ed. 1999); *see also* RSA 282-A:23 (1999). The procedures to be followed in adjudicatory and dispositional hearings are set forth in RSA 169-C:18 and :19. RSA 169-C:21 provides that if sufficient facts are presented at the adjudicatory hearing to sustain the neglect petition, "the court shall enter a final order in writing finding that the child has been ... neglected" and that "[t]he order of the court shall include conditions the parents shall meet before the child is returned home." The State contends that RSA 169-C:3, which defines "Court" as "the district court, unless otherwise indicated," limits application of RSA 169-C:21 to the district court or family division. We disagree. Having previously determined that the *de novo* review provided in RSA 169-C:28 required the superior court to hear both the adjudicatory and dispositional proceedings of a neglect case *de novo*, we decline to now limit the scope of those hearings to less than that provided by the legislature at the district court level. Rather, we conclude that the statute authorizing the superior court to hear the matter *de novo* provides clear indication that the term "court" in RSA 169-C:21 applies to the superior court in a *de novo* appeal held pursuant to RSA 169-C:28.

We are cognizant that the procedures currently set forth in RSA chapter 169-C, which support the goal of permanency planning, may require additional legislative review to insure that the process provided to those named in abuse and neglect petitions does not render unworkable the statutory requirement that the State seek termination of parental rights in certain cases when a child has been in out-of-home placement pursuant to a neglect or abuse finding for twelve of the most recent twenty-two months. *See* RSA 169-C:24-a (2002). We leave to the determination of the legislature whether further legislative action is required to achieve reconciliation of these two potentially competing goals.

Given our conclusion, we need not address the appellant's remaining arguments.

*Reversed and remanded.*

DALIANIS and DUGGAN, JJ., concurred.